SELLERS, Acting Chief Justice.[1]
Roy S. Moore and his campaign committee, "Judge Roy Moore for US Senate" ("the Committee"), have petitioned this Court for a writ of mandamus directing the Montgomery Circuit Court ("the trial court") to transfer an action filed by Leigh Corfman alleging defamation against Moore and the Committee to the Etowah Circuit Court. We deny the petition.
The materials before the Court indicate that, in the fall of 2017, while Moore was a candidate for the United States Senate, reporters working for the Washington Post newspaper approached Corfman and questioned her about Moore. Corfman told *961 the reporters that Moore had abused her in 1979 when she was 14 years old and Moore was 32 years old. Corfman's allegations appeared in a Washington Post article published on November 9, 2017. Moore has denied the allegations.
In January 2018, Corfman filed in the Montgomery Circuit Court the defamation action underlying this mandamus petition. She averred in her complaint that, after publication of the Washington Post article, Moore and alleged representatives of the Committee asserted at campaign-related events, in public statements, and during media interviews that Corfman's allegations of abuse were false, malicious, and politically motivated. According to Corfman, Moore and the Committee "defamed [her] repeatedly and in all forms of media [by] calling her a liar and questioning her motivation for publicly disclosing [the alleged abuse]." Corfman's complaint also points to an affidavit Moore submitted to the Montgomery Circuit Court in an election contest he filed challenging the results of the election for the United States Senate seat. In the affidavit, Moore described Corfman's abuse allegations as "false" and "malicious" and averred that the results of a polygraph test showed that he had never had any contact with her.
Moore and the Committee filed a motion for a change of venue of Corfman's defamation action to the Etowah Circuit Court based on the doctrine of forum non conveniens. The trial court denied that motion, and Moore and the Committee filed this mandamus petition.[2]
"Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought, (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (3) the lack of another adequate remedy, and (4) properly invoked jurisdiction of the court. Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995). 'A petition for the writ of mandamus is a proper method for presenting a venue challenge based on the doctrine of forum non conveniens.' Id. (citations omitted). We apply the abuse-of-discretion standard when considering a mandamus petition challenging a venue ruling, and we will not issue the writ unless the trial court exercised its discretion in an arbitrary and capricious manner. Id."
Ex parte Brookwood Health Servs., Inc., 781 So.2d 954, 956-57 (Ala. 2000). Moore and the Committee bore the burden of persuasion in the trial court, Ex parte Perfection Siding, Inc., 882 So.2d 307, 312 (Ala. 2003), and they bear a heavy burden in this Court. Ex parte East Alabama Mental Health-Mental Retardation Bd., Inc., 939 So.2d 1, 5 (Ala. 2006). In reviewing the trial court's judgment, we are limited to the facts that were presented to that court. Ex parte Kane, 989 So.2d 509, 511 (Ala. 2008).
Alabama's forum non conveniens statute provides:
"With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action *962 might have been properly filed and the case shall proceed as though originally filed therein."
§ 6-3-21.1, Ala. Code 1975. Moore and the Committee rely primarily on the interest-of-justice prong of the forum non conveniens statute, although they also address the convenience-of-the-parties-and-witnesses prong.
"The 'interest of justice' prong of § 6-3-21.1 requires 'the transfer of the action from a county with little, if any, connection to the action, to the county with a strong connection to the action.' Ex parte National Sec. Ins. Co., 727 So.2d [788] at 790 [ (Ala. 1998) ]. Therefore, 'in analyzing the interest-of-justice prong of § 6-3-21.1, this Court focuses on whether the "nexus" or "connection" between the plaintiff's action and the original forum is strong enough to warrant burdening the plaintiff's forum with the action.' Ex parte First Tennessee Bank Nat'l Ass'n, 994 So.2d 906, 911 (Ala. 2008)."
Ex parte Indiana Mills & Mfg., Inc., 10 So.3d 536, 540 (Ala. 2008).
As Moore and the Committee point out in their mandamus petition, both Corfman and Moore live in Etowah County, and Corfman has alleged that the abuse occurred there. Moore and the Committee also point out that, although the registered address of the Committee was in Montgomery County during the campaign and the election, a few days after Corfman filed her defamation complaint the Committee changed its address to an address in Etowah County. They assert that the Committee has stopped conducting any activity in Montgomery County and has vacated its office there. They do not, however, deny that the Committee was headquartered in Montgomery County when the alleged defamation occurred.
For her part, Corfman relies on an allegation that, during a November 21, 2017, press conference in Montgomery County, Ben DuPré, who Corfman claims spoke on behalf of the Committee, made allegedly defamatory remarks. DuPré, a likely witness in the underlying action, lives in Montgomery County. Likewise, Rich Hobson, who served as the Committee's treasurer during the campaign, lives in Montgomery County. Corfman asserts that Hobson also made defamatory statements on behalf of the Committee.[3] The affidavit Moore submitted in conjunction with his election contest, upon which Corfman also relies, was filed in Montgomery County. Finally, Corfman points out that, when the alleged defamatory statements were made, the Committee's headquarters were located in Montgomery County. Thus, the underlying action has connections to both Etowah County and Montgomery County.[4]
As this Court has acknowledged more than once,
" '[o]ur forum non conveniens analysis has never involved a simple balancing test weighing each county's connection *963 to an action. Rather, to compel a change of venue under the "interest of justice" prong of § 6-3-21.1, the county to which the transfer is sought must have a "strong" nexus or connection to the lawsuit, while the county from which the transfer is sought must have a "weak" or "little" connection to the action.' "
Ex parte Elliott, 254 So. 3d 882, 886 (Ala. 2017) (quoting Ex parte J & W Enters., LLC, 150 So.3d 190, 196 (Ala. 2014) ).
We note here that the location of the injury is "often assigned considerable weight in an interest-of-justice analysis." Ex parte Wachovia Bank, N.A., 77 So.3d 570, 573-74 (Ala. 2011). Corfman asserts that, for purposes of venue and of forum non conveniens, her claimed injuries occurred where the allegedly defamatory statements were made, and Moore and the Committee do not persuasively argue otherwise. Cf. Ex parte Wilson, 408 So.2d 94, 96 (Ala. 1981) (indicating that, for purposes of venue of an action alleging libel, the injury occurred where the libelous statement was originally published). See also Ex parte Windom, 840 So.2d 885, 889 n.2 (Ala. 2002) ("[I]n venue cases, the word injury commonly refers not to the damage allegedly suffered by the plaintiff, but to the wrongful act or omission allegedly committed by the defendant ...."); Ex parte Kane, 989 So.2d at 513 (indicating that the location of the alleged wrongful acts and omissions is highly relevant for forum non conveniens purposes). Although most of the allegedly defamatory statements were made in places other than Montgomery County or Etowah County, some of the statements were, as noted above, made in Montgomery County. Apparently none were made in Etowah County.[5]
"When venue is appropriate in more than one county, the plaintiff's choice of venue is generally given great deference." Ex parte Perfection Siding, Inc., 882 So.2d at 312. Whether the doctrine of forum non conveniens calls for a transfer of an action is an issue "addressed to the sound discretion of the trial judge." Ex parte Ben-Acadia, Ltd., 566 So.2d 486, 488 (Ala. 1990). This proceeding, therefore, does not call for a de novo review, and we cannot simply substitute our judgment for the trial court's. Based on the materials before us, we cannot say that the trial court acted arbitrarily and capriciously in determining that this action has more than a "little" or "weak" connection to Montgomery County. Thus, we cannot say the trial court erred in determining that the interest of justice does not require the transfer of this action to Etowah County.
*964 Moore and the Committee also assert that the trial court should have transferred the action based on the convenience of the parties and the witnesses. However, this Court has stated that "[t]he transferee forum must be significantly more convenient than the forum in which the action was brought ... to justify a transfer." Ex parte Swift Loan & Fin. Co., 667 So.2d 706, 708 (Ala. 1995) (emphasis added). Moore and the Committee rely on the fact that Moore lives in Etowah County and that, after this action was filed, the Committee changed its mailing address to an address in Etowah County. They do not, however, demonstrate that it would be significantly more convenient for those parties to litigate the underlying action in Etowah County than in Montgomery County.[6] Moore and the Committee also rely on the fact that Corfman lives in Etowah County, but they have not demonstrated that Corfman's residence should be taken into account in analyzing convenience, considering that she chose to file her complaint in Montgomery County. Although DuPré, Hobson, and a third alleged representative of the Committee, William Armistead, have indicated that they are willing to testify in Etowah County, we fail to see how that makes litigation there significantly more convenient. Finally, Moore and the Committee have not demonstrated that it will be significantly more convenient for other potential nonparty witnesses to participate in litigation in Etowah County rather than in Montgomery County.[7]
Considering a mandamus petitioner's heavy burden and all the materials before us, we conclude that the trial court did not exceed its discretion in denying the motion for a change of venue based on the interest of justice or on the convenience of the parties and the witnesses. Accordingly, we deny the petition.
PETITION DENIED.
Mendheim, J., and Christopher F. Abel, Hewitt L. Conwill, Jenifer Collins Holt, Claud Dent Neilson, and James Harold Roberts, Jr., Special Justices, concur.

Seven members of the Supreme Court of Alabama, including the Chief Justice, recused themselves from consideration of all matters related to this mandamus petition pursuant to Canon 3.C of the Alabama Canons of Judicial Ethics, which requires a Justice to disqualify himself or herself in any proceeding in which the Justice's impartiality might reasonably be questioned. Their recusal left Associate Justices William B. Sellers and Brady Mendheim, Jr., to hear the petition. In an order dated May 9, 2018, Justice William B. Sellers, as Acting Chief Justice, notified the parties that an additional five justices would be selected by random drawing from a pool of retired justices and judges and active circuit judges. The drawing took place on May 11, 2018. On May 15, 2018, Acting Chief Justice Sellers appointed the following five judges to serve as Special Associate Justices: Christopher F. Abel, Hewitt L. Conwill, Jenifer Collins Holt, Claud Dent Neilson, and James Harold Roberts, Jr. The Special Supreme Court consists of those five Special Associate Justices, Associate Justice Brady Mendheim, Jr., and Acting Chief Justice Sellers.

In addition to the motion for a change of venue based on the doctrine of forum non conveniens, Moore and the Committee also filed a motion to dismiss Corfman's action or to transfer the action based on their assertion that venue in Montgomery County is statutorily improper. The trial court denied that motion, and this Court declined to order answers and briefs as to that issue. Accordingly, we consider only the issue whether the trial court erred in refusing to transfer the action based on the doctrine of forum non conveniens.

The Court notes that DuPré and Hobson have indicated that they are willing to travel to Etowah County to testify should the action be transferred there.

Corfman asserts that the Committee's change of address after the action was filed is irrelevant and should not be considered. In support, she points to precedent standing for the proposition that venue is assessed at the time an action is filed. Moore and the Committee, who bear a heavy burden as petitioners for the writ of mandamus, do not squarely address that legal argument in their reply brief. In any event, assuming the Committee's current address should be considered a connection to Etowah County for purposes of the doctrine of forum non conveniens, we maintain our conclusion that the trial court did not exceed its discretion in denying the motion for a change of venue.

Moore and the Committee argue that Corfman's defamation claim based on statements made in the affidavit Moore submitted in the election contest in Montgomery County lacks merit because, they assert, those statements are entitled to a "litigation privilege," they represent Moore's opinion, and they were made in "self defense." Likewise, Moore and the Committee attack the merits of Corfman's claims that are based on allegedly defamatory statements of individuals who Corfman asserts spoke on behalf of the Committee, including DuPré's statements at the referenced press conference in Montgomery County. Moore and the Committee assert that "individuals identified in the complaint who defended ... Moore during the campaign did not speak as agents of the Committee." Moore and the Committee, however, have not presented a persuasive argument or legal authority supporting their suggestion that this Court should resolve the merits of Corfman's claims and disregard some of those claims in determining whether the trial court exceeded its discretion in denying the motion for a change of venue based on the doctrine of forum non conveniens. It is not this Court's role to perform a party's legal research or to craft legal arguments supporting a party's position. Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala. 1994). The Court expresses no opinion on the merits of any of Corfman's claims.

See note 4, supra.

Moore and the Committee speculate that, because Corfman claims she took a leave of absence from her employment in Etowah County as a result of the alleged defamation, "individuals with [Corfman's] employer in Etowah County may be witnesses." Moore and the Committee do not identify any particular witness associated with Corfman's employer, explain how such an individual would have to participate in the underlying action, or persuasively argue that the potential existence of such a witness necessitates a transfer of the action to Etowah County.